Okay, Governor of Virgin Islands, you're the Attorney General of the University of Cleveland in Lansdale, Illinois. Is that correct? Yes. Okay, please record.  One minute. Okay. ... Over 70 months ago, five years and ten months ago, in the District Court of the Virgin Islands, a final settlement agreement was made in a suit by the Virgin Islands Bureau of Internal Revenue, VBER, as it's called, against Mr. and Mrs. Lansdale. To implement that settlement, VBER was obliged to return the loan from Dove Corporation to the control of Lansdale so that they could liquidate that corporation's fixed assets, which were oil leases, and pay over the proceeds to VBER. Ms. Pezzuto, VBER's former director and later counsel, was, as a result of a contested to motion, appointed, or rather consented to motion, appointed to carry out that return. This is the only source of Ms. Pezzuto's authority. She was to serve in that limited capacity without fees. Had Ms. Pezzuto carried out the obligation imposed on her by the 2002 order, the oil assets of Lonesome Dove Corporation would have been liquidated by the Lansdales, probably when oil was selling at over $100 a barrel. Not a single oil lease has been liquidated during the 70-plus months that Ms. Pezzuto and her VBER co-conspirators have prevented the consummation of the final settlement agreement. Oil is now selling at $43.80. Mr. Gibbons? Yes. I grant you that there's a sort of a four score and seven years ago sense to this case that it's been going on for an awful long time, and I certainly recognize that you lay responsibility for that at the door of the VBER and the Bureau of Revenue for the Virgin Islands. But could you speak to, I know we're going to need to speak about jurisdiction as well, but as far as we're speaking about some of the merits issues here, could you address the contention by the other side that the length of these proceedings is not the fault of anybody on the other side of the feed in this case. It's directly the fault of the Lansdales for hiding the ball. That's the gist of it, that this has gone on because the Lansdales are hiding the ball. If Your Honor, please, the record simply doesn't sustain that assertion. The final settlement agreement said that the corporation's assets would be liquidated by the Lansdales. They have not had the opportunity to do so, and in one place at least, the pleadings that have been filed on behalf of the government of the Virgin Islands, they have the nerve to say they haven't been able to liquidate the leases because they don't know the addresses of the leases. They've been collecting rent from them for over 70 months. But they weren't supposed to. The settlement agreement relegated that task to the people who did know the addresses of the leases and could have accomplished what the settlement agreement called for promptly. There's a statement by the district court in one of the pre-orders that was in here that I'd like to get your response on. I don't want to speak for my colleagues, but I've spent a whole lot of time trying to figure out this massive record and the issues that are involved. So, you know, it's going to be difficult to... I appreciate what you're saying, but it won't cover all these issues. One of the things that seems to me to be sort of another issue is this statement by the district court that the court would not take action to confirm or to vacate the arbitration report because the receiver's participation may be necessary to resolve the third issue. And by the third issue, I understand that the ownership of the gas leases. Am I correct about that? Your Honor, the receiver and Weber have argued to the district court that only the district court could decide the ownership issue, but the district court denied that motion. Right. So here's my question to you. Take it for the sake of discussion here that as we read this, we try to understand what the district court's getting at. I take it what the district court is getting at is that all three of these issues are interrelated. All three of them have to do with payouts of money dealing with the oil and gas leases. And since the receiver is the one who's been handling the investigation of the oil and gas leases, the arbitrator would be well-served to have the information from the receiver in deciding that issue. You made the assertion that these orders are essentially final and that the two out of three issues decided by the arbitrator are distinct and separable. When I read this from the district court, it appears to me that the district court is saying these are not distinct separable issues, but this third issue is intimately tied to the first two, so it would be premature for me to either confirm or deny. I would like you to respond to that, what I think is the assertion of the district court. There have been a number of district court orders entered in this case. Almost every one of them are on here. But I think the one you're referring to is when the district court denied the motion to confirm the interim arbitration award on the ground that only two of the three claims that had been presented in that award had been decided. The award is crystal clear that those two issues were finally decided. The district court said, I'm not going to confirm those awards. I'm not going to vacate them either because they are not final awards. That just ignores the language of the Federal Arbitration Act which says explicitly that an interim award disposing of a claim can be confirmed. It just broke that out of the statute book. I have no doubt it could be confirmed. The question is should it be confirmed. What I'm asking you to respond to is what I understand the district court's reasoning to be, which is that there are three issues here that are all interrelated. The receiver knows about those things and I'm not inclined to dismiss the receiver from this action or to confirm or vacate because the receiver's got something to say about these three interrelated issues. Well, first, Your Honor, had you been addressing the issue, maybe the reasoning would have been spelled out. What we have here is just a conclusory statement. Now you say he's confirming the receiver's authority. What authority? The only order that has been entered confirming any authority on her is the order that was entered to implement the final settlement agreement. She is acting as if she was appointed in the 1992 action, which was dismissed with prejudice by a final order before the present suit was even started. No order has ever been entered in the 1992 action appointing her a receiver. There was a 2004 decision denying your motion to have her removed and that was not appealed by her client. What are we to make of that? Your Honor, perhaps we should have come here then. But even then, my clients were very old and they decided to participate in a settlement negotiation, which led to a final judgment, or rather a final stipulation of dismissal with prejudice against the Lansdales in the suit that was started by Weber after a final judgment had been entered in the 1992 action against them, which was brought by the 1992 receiver, and has since simply been ignored. Is there a difference between what you want and what you don't want? I'm concerned about you. You have three orders that you are entitled to. Three orders that you are not entitled to. Could you explain to me? I'm concerned about your position. Well, go through how it is that you have your position today. Well, first of all, we're dealing with actions that have been taken not in advancing toward a final judgment. We're dealing with actions taken in a sense post-judgment. They never can become final. And that's what the co-conspirators want. They want to be able to continue Ms. Pezzuto's lifetime annuity where she's collecting fees in a case that should have been closed 70 months ago. Well, that argument may be relevant to you in advance, but I don't know how relevant it is to a dismissal. Well, Your Honor, we've dealt extensively with the case law dealing with the finality of post-judgment orders. But in any event, if ever there was a case calling for this Court's exercise of mandated jurisdiction, this is it, because we've been faced with 70 months of lawless conduct by Lieber and Pezzuto. Can I take from that answer that you acknowledge that there may be some questions about this Court? I do not, no. And I rely on the cases that I referred to in the brief. They are reviewable under 1291 because they are, in essence, post-judgment proceedings. There is no way that you could ever get them reviewed unless you review them under 1291, except, of course, for mandates. While we're talking about mandates, it seems to me that the Virgin Islands Bureau of Revenue says in their brief that they want to arbitrate the remaining issues of the case. What this tells me is the brief seems to say, you want to arbitrate the remaining issues of the case. And the district court has tried a motion to exclude arbitration, arguably on the basis of excluding jurisdiction to the receiver. So it seems like the way to arbitration is open. And why is that an adequate legal remedy for the parties that are going to have the only excuse, which is that the case is going to be granted, to arbitrate? And I wonder, of course, to arbitration. Your Honor, it's a bit more complicated than you've outlined. First, as soon as we filed a notice of arbitration, Weber moved for an order to prevent it. That order was denied. So an arbitration went forward. It resulted in a final award on two of the three claims. We moved to confirm that award. The order that I think you're referring to is the one in which the judge says, I won't confirm the award. I won't vacate it. I won't do anything. But, of course, the same day he entered an order directing my client to pay $1,000,000. We're getting a little bit off the issue. You want to talk about the merits. Maybe you're right. Maybe the arbitrator was wrong. I mean, maybe the district judge was wrong in what he said. But my question is, you say we're entitled to mandates because we have no remedy in law that would protect us from irreparable injuries. And I'm saying to you, why do you not have a remedy that would protect you from irreparable injuries, namely arbitration, which you claim to your client, claim to want, the other side claims to want, and the district court hasn't precluded? It's precluded confirmation of the two awards that would help us. If the same time has been spent arbitrating the third and final issue that has gone on and passed and litigating disappeals about this issue, wouldn't everybody be home and happy? No? Oh, no. We're at least home. No, because the substitute arbitrator, a substitute arbitrator, because part of the conspiracy was to get rid of the arbitrator that they first consented to having, refuses to go forward until he's been threatened that if he even looks at the first two awards, they're going to move to get rid of him. And if he, he has just said, I won't go forward until we hear from the court of appeals. Has he been asked by the land sales to arbitrate, to finish the arbitration? Sure. We want to finish the third claim. If we say go forward, you'll go forward. Of course we will. But in the meantime, you should direct that the, you should reverse all three orders. And enter an order enforcing the two interim awards, returning lonesome dove to the land sale, and terminating Ms. Pezzuto's authority. Then the third arbitral claim can go forward. In the meantime. Doesn't that ignore what the district court said? The district court said the reason I'm not terminating Ms. Pezzuto is because I think a receiver has input that will help the arbitrator. Your Honor, she doesn't have to be a receiver to help the arbitrator. She can be subpoenaed as a witness. We're going to put three additional minutes on that. Thank you. The judge has been treating her as if she was a receiver appointed in the 1992 case. And has continued all along. In fact, she's a usurper. The only order under which she has any authority is the one entered pursuant to the terms of the final settlement agreement. And while she has been in place, more than $3 million has been collected in royalties and payments by the land sale on their guarantee. She and Deidre take the position that that won't even be credited against the guarantee. And no steps are being taken to liquidate these leases and pay the money to the government of the Virgin Islands. Meanwhile, she has collected over $1 million in fees and expenses that should have been paid on account of the lonesome dove's obligation undertaken in the final settlement agreement to pay $6,250,000. Your Honor, this is all about an ongoing conspiracy to prevent the execution of the final settlement agreement. That settlement agreement is not written on toilet paper. But the message that we have received for 70 months from Drever and Bezzuto is that land sales, as far as we're concerned, that's the highest and best issue they're making. Let me ask you something from the receiver's brief. The receiver says, it's difficult to imagine how this report could, on one hand, abuse its discretion by not staying for the judicial proceedings and pending completion of arbitration, and then also abuse its discretion by refusing to declare that it had exclusive jurisdiction to determine the non-business asset. That is the position raised by the land sales. In other words, I take it that they're saying you've taken inconsistent positions with respect to the court's order as to its own jurisdiction. Can you help to straighten that out? We haven't taken any inconsistent positions at all. We're saying the final settlement agreement has both a release, as broad a release as I've ever seen, and an arbitration agreement as broad an arbitration as a clause as I've ever seen. And the district court simply ignores them in both of his ways. As a matter of fact, in all of his ways. He's complicit in letting this ongoing conspiracy to destroy the final settlement agreement continue. I see my time is up. I have a 13-second reserve time. We'll have you back on the phone. Let me add one good statement. When the turnover order proceeding was going on, there was a partisan hearing in the court. Did you argue, as you say here, that you couldn't really propose that because you have waived your right to arbitration from your client? Did your clients in that hearing before the district court take the position that that was an arbitrable issue and therefore that it would be inappropriate for the court to do so? Absolutely. We also pointed out to the court that when that claim was made, long before the order was issued, it was first presented to the magistrate court, a judge, and opposition on the merits were also treated. That's in the supplemental appendix. So the district court's statement in that order directing the payment of $1,750,000 that the facts are not disputed is simply false. That's inconsistent with the record. Well, the judge asked in the hearing whether he wanted to go forward with that order, and he went out there personally and found records that show that his clients didn't find the opportunity to do so. Because we didn't want—he was indicating that despite the arbitration agreement, he was going to hold the hearing. And because we didn't want that, we had entered into a settlement agreement. We intended to live up to it, and we were entitled to arbitration. Had we consented to it, we would have lost that argument. Is Lonesome Dove a party to the settlement agreement? I'm a settler. Yes. Thank you. Ms. Hodge. Good morning. Maria Tankinson Hodge for the receiver for Lonesome Dove Petroleum Company, Joanne Bizzuto. May it please the court. The case before the court this morning— Has the district court recognized Lonesome Dove as a party to the settlement agreement? I don't believe so, Judge, and I don't believe that the arbitrator has either. I think the arbitrator has specifically acknowledged that Lonesome Dove is a corporation in receivership, that the receiver was not a party to the FSA. Both the arbitrator who entered the interim award and the successor arbitrator have so stated, and I think the district court has recognized that, that the receiver is not a party, and that the corporation she represents is not a party to the FSA. Exactly. That's the corporation she is responsible to manage and represent, and the corporation that the court has repeatedly held. And because Lonesome Dove was at that time in receivership, and the parties acknowledged, understood by the terms of that agreement and other proceedings that are in the record, that the receiver was not a party to that, wasn't bound by it, and would have to be separately dealt with. If I could say, Judge, there is an error in the presentation this morning about the role of the current receiver. She was not appointed only to return assets to the Lansdale. The order appointing the receiver is in the record before you at supplemental appendix page 903, volume 6. She was appointed as the successor receiver to the original receiver, with full powers to be the receiver of this corporation. The fourth in a long line, right? I think she is the fourth, Judge. I may have lost track of my numbers, but admittedly, yes, I think the fourth, because there was Mr. Nepple, Mr. Bowery, and then the person before Mr. Zutto. Who made the initial motion for the appointment of the receiver back in 1992? I'm assuming it was the Bureau of Internal Revenue, Your Honor, but that is much more than that. Not immediately. One of the things I know, I know that the receiver is appointed to the corporation, but in light of the fact that the BIDR asked for the appointment of the receiver, I have a little bit of difficulty seeing why the receivers of this and BIDR do this. Well, any time a creditor asks for the appointment of a receiver for a corporation, which is in effect the debtor of the applicant for the receiver, it may turn out to be the case that if the receiver does their job properly, ultimately the interests of the creditor and the debtor corporation will in some way be paralleled. But the receiver has an independent obligation to the court that appoints that person to act responsibly, to act in conformity with the court's rules and orders, and to act in the interest of the corporation that she manages. In this case, I think a fundamental misunderstanding is that it seems like there is an equitable responsibility to the creditor to have asked for the appointment of the receiver for the person, and that creditor steps in and takes action. It's on her own. They're entering into settlements. It's a free arbitration. It's definitely not here. I have difficulty understanding how there's not a unity of interest. I'm not sure if the term unity of interest would be correct, but my understanding is that the rules that govern receivers specifically require that the receiver can only be answerable to the court that appoints her. She must report to that court, and in fact, Judge, in this case, just if we may move from the world of hypothetical, this receiver has not only been appointed by the court by consent of both parties as the successor to the original receiver, but she has filed written reports with the court from the beginning, and those reports confirm that from the time she was appointed, it was known and understood that she was going to marshal the assets of this corporation. Her very first report, Judge, which is a part of the record before you, Supplemental Appendix 905-910, specifically reports to the court, copied to the Lansdale, that she's identifying, gathering, and accumulating lots of those assets. No objections were filed to that. She reported that she was trying to assemble the revenues that properly belonged to Lonesome Dove, attributable to the assets that properly belonged to Lonesome Dove, that had not yet been properly remitted to the corporation. That's in her first report, again, Appendix 908, and she attaches correspondence from herself to the Lansdale's attorney at that time, shortly after her appointment, confirming that. Could there be too much of a unity of interest here? The Lansdales assert that the receiver is signing her reports as a special assistant attorney general for the Virginia Department of Justice, and that during the time she's been a receiver, she's also represented the Bureau of Internal Revenue in other cases. Are those things factually accurate? No, Judge, neither one is factually accurate. She signs her report in her capacity as receiver, and the two cases that they refer to in that footnote, which I noticed the other day, are not cases where she represented the Bureau of Internal Revenue. She represented another government agency under a special contract. So during the time she was a receiver, she has been representing the government of Virgin Islands? She has had special appointments in certain limited cases. And that doesn't strike you or the receiver as perhaps compromising her neutrality and putting her in the camp of the government that she's been representing simultaneously? It doesn't strike me as undermining her credibility or her impartiality, Judge, because she has had to report to the court, and has done so over the years of her appointment. The court has had an opportunity to— Were these things reported to the court? By the way, Judge, I'd also, while I'm being a neutral arbitrator here— excuse me, a neutral receiver here dealing with loans and debt interests, I'd like to represent the government to which one of the parties in this case is a party. You know, Judge, I do not think it was her obligation to say that. It's certainly been understood from the time she was appointed. It strikes me as a remarkable assertion that if a party is representing— if a supposed neutral is representing the government, which is a party, the suit in which she's involved with is supposed neutral, that that's not something that we think the court might want to know. Well, Judge, when she was appointed, if you look at the motion that's in your record, her role as a former director of the Internal Revenue Bureau, as a former assistant attorney general, as a person who was a client representative at the mediation that led to the settlement, was all put before the court. So it isn't a surprise to anybody that she had that association. Doesn't former strike you as different from current? I mean, those were former associations, and if the judge thought and nobody thought to object on the basis of former associations, I guess that's up to them. But a current direct association with one of the parties, you don't think that's different from a former one? Well, I don't specifically because, among other things, the receiver in this case was not representing the Bureau. Those were other government agencies that are not involved in this litigation. The Bureau is a separate entity. And because the Lansdales consented to her appointment. If somebody objected to her continued role on the basis that she had handled two matters on contract for the government unrelated to this, one would have expected to see that objection raised. I don't know that it ever came up. I'm not aware of it on the record. But I would, as I see my yellow light come on, like to say to the court that this is not a case in which the Virgin Islands is the only court that has found that the receiver is properly performing her duties and that the Lansdales have been engaged in a long practice of obstructing her efforts to marshal those assets. By my count, 12 judges over the course of this proceeding have either held that the receiver was properly performing her duties or that the Lansdales were obstructing her. Most recently, Judge Walter Smith, the chief judge of the U.S. District Court for the Western District of Texas, entered an opinion transferring the venue of a quiet title action the Lansdales brought to try to stop the receiver from recovering long-signatured assets,  to frustrate the collection of taxes by the bidder. The role of the receiver has been consistently, Your Honor, simply to try to perform her responsibilities to marshal the assets of this corporation. They are to be sold under the settlement agreement. That is understood and not disputed. It's also not disputed that under the settlement agreement, all the assets of Lonesome Dove are to be sold and all the proceeds of those assets are to go to the Bureau. What's your response to the assertion on the part of the Lansdales and the statement in the arbitrator's interim award that the Bureau should move immediately for the termination of receivership? And I mean whether the receiver thinks she's done or not. Should move immediately because that's what the Lansdales bargained for and that's what the Bureau agreed to. So regardless of whether one thinks that the Lansdales are scoundrels for hiding assets, the Bureau, who's got the responsibility to speak on behalf of the people, agreed enough was enough and so the receiver should have her authority terminated. What's the response to that? The response is that the agreement did require the Bureau to file a motion to seek the termination of the receivership for the District Court to rule on. Obviously, it wasn't within the Bureau's control whether that would be granted, as the arbitrator himself says, but we know that that motion was made. It wasn't made by the Bureau. It was made by the Lansdales and the District Court of the Virgin Islands, after the settlement agreement had been entered, after the FSA was signed in 2004, the District Court of the Virgin Islands had a motion to terminate this receivership, had a full hearing at which the receiver testified, and at that hearing, Mr. Lansdale's legal counsel told the court that any revenues which he had received for the assets that were properties of Lonesome Dove belong to Lonesome Dove currently, that those assets of Lonesome Dove and those revenues would be turned over. So they gave that assurance, and by the way, in that hearing, Let me ask you this question. Is there any reason why the folks at the Lansdales can't file another motion for the termination of the receivership? The Lansdales or the Bureau could file such a motion, and then it would be for the District Court to determine whether, on the record below, particularly given the present posture, where the receiver has filed her final report on all the assets, whether the time is right to terminate or whether that work should be completed before the termination occurs. Certainly that could be done. I didn't really get a chance to speak to you about why we don't think there is jurisdiction to hear any of these orders. We don't think they are appealable. We don't think they are collateral orders. On that point, I was going to ask Mr. Williams about your position. How do you pass the clear language of the time you have seen 16 days, 16 months, 2 years, 2 hours, 3 or 4 months, 2 years in time, and the posture of the court? What does it mean? Well, it probably is more proper than this, but I would say this, Judge. I don't think this is a partial award. It's specifically titled an interim award, which I understand to mean interlocutory, temporary, and the District Court said in his order he did not think it was a severable separate component that should be subject to confirmation at that time, that the entire group of three issues presented to the arbitrator should be considered before he decided whether to affirm or not. And, of course, we know the first arbitrator who had entered this, what he titled interim award, not partial award, had his partiality question. So for the district judge and his discretion to say, I'm not going to either enter judgment on this interim award or vacate it. I'm going to let the arbitrator who's the successor decide the remaining matters because they're intertwined in the courts, or at least they may be intertwined, I think is consistent with the language of that statute. Thank you, Judge. I'd like to be the head of the plea. You keep using the word partial, and I'm not sure that we have a consistent, maybe because I'm not that well-educated about receivership, but I thought that a receiver partial, by identifying assets and gathering them and putting them in a position to distribute to those that are entitled to them, I would have thought that when you were identifying assets, one of the things you might identify is claims from private corporations. Your Honor, I would not have thought that that meant that you had some authority or the receiver had some authority to do something other than where it's an important thing to go litigate. How does marshaling assets entitle you to a whole different process? The question of whether you have to litigate to marshal, that is to identify and gather together the assets, may vary with the circumstances. In this case, the receiver was— I'm talking about when the corporation has a claim against somebody outside the corporation, and identifies a claim, does that give the receivership law? I'm going to ask you whether state law or federal law, does that entitle the receiver to a whole different process of law? I don't think it is a whole different process of law, Your Honor. My understanding is that as the receiver was reporting her activities, at least quarterly, maybe monthly, but at least quarterly to the district court, she was— I'm talking about the turnover order. Fair enough, Your Honor, but I'm suggesting to you— Ordering somebody to make claims. In this case, the receiver did not, on her own, take those funds from the Lansdales. She presented her motion to the court and said, these are in fact assets of Lonesome Dove. And the court heard the testimony. She was cross-examined by the Lansdales. And the court ruled that those were in fact the assets of Lonesome Dove. No complaint, no answer, no jury trial. No, it's our understanding that that procedure that was followed was consistent with a normal procedure. I believe that there's at least brief allusion to that in our brief. Certainly, it was not presented to the court that the respondents were defending on the grounds that there hadn't been a complaint or an answer. They participated. They cross-examined her. They had her evidence. They had ten volumes of exhibits. They chose not to offer any responsive evidence. And in her efforts in other jurisdictions, the courts in each case have felt that she was properly exercising her responsibilities as a receiver to marshal those assets. I have one additional question. As I understand it, about a year ago now, last December, the receiver filed a motion for a second term in her order, seeking $6.2 million from her to be applied against the wealth that are alleged to have been diverted to the final Lansdales for their own purposes and to have that money turned over and applied against, I guess, the $6.5 million cash prompt. The Lansdales assert that if that order were granted, it would be in direct conflict with the interim award that the arbitrator made. Because, by any account, I think that the Lansdales, that they sunk several hundred thousand dollars in satisfaction with that cash prompt. Can you speak to that assertion that, at this point, the receiver is taking action to put the receiver in direct conflict with the court towards the second term of the order with the arbitration award that's already in place? That is clearly not correct, Your Honor. The arbitrator's interim award, to the extent that it spoke about the funds, said that revenues that the receiver had collected during the pendency of the receivership should be credited to the $6.5 million cash portion of the settlement. And the current turnover order is a revenue item. That is, it relates to revenues derived by Mr. Lansdale from undisputed oil and gas wells that are definitely the property of Lonesome Dove that haven't yet been paid to the receiver. The report that was filed in December by the receiver is now the complete report of her work on identifying all of the assets and the revenues of both the undisputed and the so-called disputed assets. And that would include not just revenues, but title to the underlying assets that have not yet been turned over. So even under the arbitrator's interim award, even if the judge granted that all of the items in Ms. Vizzuto's December report are in fact property of Lonesome Dove, clearly there's nothing in the arbitrator's order that says the value of leases and assets should be credited against the $6.5 million. This settlement is $6.5 million cash plus all of the assets of Lonesome Dove. Right. And what I understood them to be saying, and I guess you're disputing it back to them, I understood that Lansdale said, and I might have misunderstood, that they have paid over $300,000. They have certainly paid over $300,000. And therefore, the second turnover motion, which seeks $6.2 million to be placed against, I took it then to be saying against the cash compound, would create a conflict. But I think I'm understanding you to be saying that $6.2 million includes not just monies to go to the cash compound, but represents liquidation of other assets. Values of other assets. And Judge, I could just add here as a final point, this is a perfect example of why we should not be on appeal at this stage. We should be letting the district court complete its work. Because now we're speaking hypothetically about what would happen if the district court, on the basis of something filed since this appeal was filed, took certain action that we could only speculate about. And the whole notion of appealable orders is we ought not to be coming to you until there is a final conclusion to the litigation so that we don't have this piecemeal review, and certainly not hypothetical review of actions that haven't even been taken below. And is there an end in sight? That's what the end in sight says. There's no end in sight. So maybe my last question to you is what's the end in sight? I think the end in sight is clear, and we get there far sooner. Well, the matter should be remanded to the district court. The appeal should be dismissed. The district court has sent the parties back to arbitration to finish their work. The arbitrator has said he's prepared to complete this proceeding as soon as this appeal is finished because he doesn't know where he stands with dependency of the appeal. The district court would presumably have the hearing on the receiver's final report filed in December that would have to do with the assets that she has identified. She might be called upon to testify before the arbitrator. That's possible. And he might include testimony from her in his final report. And when the arbitration is finished, the district court would have every reason to expect this matter would be concluded. Certainly at that point, the receiver would be expected to be in a position to file any final accounting and conclude the matter. The reason that the horizon is a moving line is that we have spent a year in this appeal proceeding that should never have been filed instead of finishing the work remaining below that all parties agree, I think, could be concluded without difficulty if we were just back before the right parties. The appeal hasn't stopped anybody from continuing to proceed? The arbitrator has taken the position, as I understand it, Judge, though my client is not a party to the arbitration, that he is not able to proceed until the appeal is decided because he feels the appeal casts questions over his proper role. So that's my understanding. He did enter an order. And my understanding is that he said he felt he couldn't continue until the appeal was concluded. Thank you, Judge. Mr. Higgins, have you asked the arbitrator to continue to pursue the joining of Penitentiary Superior on behalf of the IBO? Judge, at the present time where the arbitration stands, the arbitrator entered a procedural order No. 2, which basically stated that he has no jurisdiction to decide the termination of ownership of an asset, an issue that belongs to the Penitentiary Superior Court. He stated the proceedings because the Interim Arbitration Court basically needs to stay or affirm or vacate that award. And that's what that is. The answer to my question is no. Well, you're correct. We are – the member's position is very getting to Judge Higgins' question. We are willing to arbitrate the issues that are arbitrable. And the proceeded order No. 2, I think that the arbitrator was very clear. He has jurisdiction to decide what issues that are claimed to be arbitrable. We've always taken the position that the ownership of the assets rightfully belonging to Columns and Dove must be decided by the district court and the receiver, as indicated in Section 3.1 of the FSA. The receiver is – the parties agreed that the receiver had still work to do and had to file a final account. That is consistent with the 28 U.S.C. 3103G3, which says a receiver in a federal receivership has the obligation and requirement to prepare a final account. Didn't your client find itself to move – to terminate the receivership? I mean, that's what the federal – the final settlement agreement looks like it says. That's what the arbitrator said it says. And I thought this was a particularly important statement. The FDR – by the arbitrator, the FDR does not have the prerogative to effectively disregard the settlement agreement because finally the receiver is in place. So, boy, it's a mess. In other words, you may have finally got the receiver you wanted all along, but that's irrelevant because you agreed to end that receiver's term as part of the bargain you struck with the Lansdales. Well, Judge, in the other Section 3.1 of the FSA, there is no time limit for the closure of the receivership. Everybody knew that the receiver had a lot of work to do still because transactions were attempted and filed for 10 years. Nobody – the identity of the assets wasn't known at the time. So the remedy under 3.1 was if the receivership wasn't closed in 30 days, then the Lansdales had the right with the consent of Denver to deposit any monies in an escrow account. And they decided not to do so. Instead, they decided to stop making the payments altogether under the cash component of the deal. So we don't have – Well, that doesn't really answer my question about the arbitrator's decision. The arbitrator having decided this piece of the case, that is, that you were obligated under the FSA, whether you agreed with the arbitrator or not, you were obligated to make that motion. What is it that prevented you from saying, well, if that's the arbitrator we agreed to, I guess we'll do what the arbitrator says we ought to do? Judge, after that award was entered, there came to light facts regarding prior tax debts that were not disclosed by the arbitrator and as well as other information. The short answer is this. After the arbitration award, we did send a letter to the receiver to prepare a final accounting. And once he was able to do so, we would immediately move to a termination of the receivership. And six years of delay, you think, is wholly the fault of the Lansdales? Yes. Because, you know, in 2004, Judge Moore ordered Lansdales to provide an accounting. It's in the record here in the transcript. It's accounting of all fees or oil and gas royalties that they had received since 1992. And because they were in the right position to do so. Well, the Lansdales didn't provide that accounting. And the receiver had to undertake personally an effort to recreate the record, which was the result of reviewing thousands, hundreds of thousands of pages. So I do say yes, it was their fault. And the Lansdales say that in 1997, you were aware of these issues with Judge Elkman, the arbitrator, which you, you and, of course, your client, had an epiphany about after you lost the arbitration battle and moved to dismiss. Is it accurate that that was the 1997 set of information that you had years before Judge Elkman was even appointed or agreed to fight your side as arbitrator? Judge, it was not disclosed in our up-to-date disclosure statement that we had prior tax profits. It was not disclosed to us. It was a tax-based note. It's usually the duty and responsibility of the arbitrator to make disclosures. Did I have knowledge of that? Certainly. Did everybody have knowledge of that? Absolutely not. We don't. Did your organization, did the Bureau of Internal Revenue for Virgin Islands know about it? I think that on privacy concerns, there are certain departments that are, you know, have knowledge over tax issues. And constitutionally, I don't think other departments can. So, I don't think constructive knowledge exists in this case because under the law— Answer me this. Is there anything about the first arbitrator's decision that you can point to that indicates bias or ill-motive on behalf of the arbitrator that could warrant what happened? Our issues with that award, Judge, is based on the fact that he didn't hold an absentiary hearing. All it was was— You said you didn't want one. The record shows you saying we don't want one. Correct. Judge, let me point you to the record. If you—the record reflects that on February 16th, the land sales are arguing that we somehow waived a right to a hearing. Wasn't there—isn't there a letter in the record that says expressly we're content to have this decided on the papers? No. No? No. I mean, there's a letter saying that we don't know if we have to have oral argument on our summary judgments. We didn't waive an evidentiary hearing. Well, if you said we don't want oral argument, we don't even want oral argument on the summary judgment papers. Isn't it fairly improbable that you're not asking for a hearing? No, Judge, because we—the arbitrator set up an evidentiary hearing subsequently in August. The way it worked was the member filed a summary judgment on both our claims and the counterclaims. The land sales did. So when there's a summary judgment, either you grant judgment in favor of the member or there's a question of fact. We had witnesses lined up and experts, so we wanted to streamline the case. We filed a summary judgment, and the arbitrator said I'd like to hear oral argument, not an evidentiary hearing. Okay, fine. We had that. In the interim award, he describes it as what he describes as a loosely held oral argument. Well, we never waived a—or stipulated—entered a formal stipulation to waive— I guess I'm having a hard time because you've corrected me, but help me with the logic here. You filed summary judgment motions, which by definition means there's no issue of fact. This can be decided on the basis of the record that it exists because there's no issue of fact, right? Right. You waived oral argument so that we don't even feel like we have to come in. No, no, no, Judge. We didn't—we didn't—we judged—the arbitrator wanted oral argument. We said fine. Right, but you'd actually—you'd taken the position that there's no issue of fact. You could go forward on the papers. We don't even need to argue. Then when you lost, you said, wait, we should have had a hearing. Is that how it played out? No, we actually sent him an email stating we want deadlines and procedural, you know, following the hearing procedures, a list of witnesses, a list of exhibits. We did send that email following up to that hearing. So there was no intentional effort to waive our right to have an evidentiary hearing ever. In terms of the summary judgments, typically when there's a—you know, in a civil case, if there's a summary judgment and it's denied, then, you know, you have a trial, a full-blown evidentiary hearing or trial. So what I'm saying is it didn't occur to you that you might lose the summary judgment motion. The other side might win the summary judgment motion. Well, if it's our summary judgment, Judge, it's either going to be granted in our favor or denied. Okay. That's the whole point. If they wanted to move from summary judgment in their favor, then they could have done that. The judgment was either supposed to be entered in our favor or denied and let us go forward with the evidence. Correct. To go to Judge Fischer's question, we believe that the court has no jurisdiction. It's not a final order under the final judgment rule as supported by green jury and lawyer. There's issues left. I don't know what judgment he's referring to. He's referring to tax judgment. If you look at his cases nationwide, all the cases he cited were the formal bifurcation stipulations signed by the parties. Okay. There was an evidentiary hearing where the parties were able to put on the evidence of their claims. The district judge decided the motions by the merits. None of that exists here today. None of it. So what FIBR would like to have is sent back to the district court. I think the receiver has to finish the final accounting, which the parties understood to agree in the final settlement. And once that's done, the Lansdales can make whatever claim they want or argument that somehow we've released our rights to certain assets of the company under Section 5 of the FSA in arbitration. If you go to Michael's case, it's the length of the proceedings. The length of the case doesn't give the court jurisdiction over a non-final order. Thank you. All right. Thank you. All right. All right. All right.   Bye-bye. I look forward to hearing from you.       Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Christian, I just wanted to ask if the Lansdales can't achieve what the district judge said, and have the opportunity to say, wait a minute, there's ratioed accounting here, there's arbitrability, there's, you know, separate sections. When do they get a chance to do it? They can challenge that accounting in the district court. They've already, like, through this site, practically admitted to that. I want to know when they get appellate review of the district court's turnover of a million checks. Okay. Yes. I think that they would have to wait until the arbitrator. The arbitrator, once the final accounting is done, the arbitrator would issue an award. That would be affirmed or vacated. And that would be approved by the court judge. That's when they would have the jurisdiction. You'd have to have a final accounting. They raise the issue. They want to raise the issue as final accounting. They can do it in arbitration. There's a final arbitration award. That's then affirmed or vacated in the district court. Then you have appeal. Do they get their money back? The million to 6.2 in the second term of order. I think if they're successful, yeah. But that's the process. If you have an administrative tax, that's sort of the process. That's the way it's applied. I did, Your Honor, considering some of the mistakes, very much asked. But addressing some things that are said by Mr. Lewis, he keeps insisting that she was appointed pursuant to the original 1992 case. A case that was dismissed with prejudice by judgment. So ordered that Judge Moore, in his schizophrenic opinion, said, yes, I dismissed it with prejudice. That receiver's case is over. He then went on to say the fact that the receiver's case is over is no far to Bieber's plan. Because the Virgin Islands, the government wins heads, the Lansdale wounds heads. With respect to the arbitration request, what cannot be even seriously argued is your jurisdiction over refusal to confirm the arbitration award or refusal to order that the arbitration go forward a single time itself. In fact, both counsel are on that. It's very helpful. We can take care of these matters.